UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| RAFFI KRIKORIAN, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant **Raffi Krikorian, M.D.** (the "defendant"), represented by defense counsel **Jeff Jensen** and **Matthew McBride**, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

The defendant has requested a global criminal and civil resolution of the allegations pending in this district against him. This plea agreement and the promises made herein by the United States are part of the requested global settlement.

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the Information, the defendant's agreement to

voluntarily surrender his Missouri medical license ending in P45, his Illinois medical license ending in 346, and his inactive California medical license prior to the time of sentencing, and the defendant's representation that he holds no other licenses to practice medicine, the Government agrees that no further federal prosecution will be brought in this District relative to false statements made by the defendant in participation agreements and revalidation applications to Missouri Medicaid from August 10, 2021 to September 30, 2026, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that they will jointly recommend a sentence to a term of probation, which is anticipated to be within the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

**3. ELEMENTS:**

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1035, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant made a statement or representation in a matter involving a health care benefit program;

*Two*, the statement or representation was in connection with the delivery of or payment for health care benefits, items or services;

*Three*, the statement or representation was material to the health care benefit program;

*Four*, the statement or representation was false, fictitious, or fraudulent, and

*Five*, the defendant made the false, fictitious, or fraudulent statement knowingly and willfully.

**4. <u>FACTS</u>:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

**<u>*The Defendant*</u>**

The defendant admits that, at all relevant times, he was a physician, licensed to practice medicine in the state of Missouri. The defendant admits that, at all relevant times, he was the 100 percent owner of Comprehensive Cardiovascular Consultants, Inc. ("CCC"), a cardiovascular care clinic located in St. Louis County, Missouri.

**<u>The Medicaid Program</u>**

MO HealthNet administers the Missouri Medicaid program, which is jointly funded by the State of Missouri and, through the Centers for Medicare & Medicaid Services ("CMS"), the federal government. Missouri Medicaid is a health care benefit program within the meaning of 18 U.S.C. § 24(b) that affects interstate commerce and provides low-income citizens of Missouri with medical benefits, items, and services.

The Missouri Medicaid program reimburses enrolled providers for covered services provided to Medicaid recipients that are reasonable and medically necessary. The defendant admits that, to enroll in the Missouri Medicaid program, a provider must, among other things, submit a Missouri Medicaid application. The defendant further admits that, every five years, providers who wish to stay enrolled in Missouri Medicaid are required to submit "revalidation,"

or renewal, applications to provide MO HealthNet with updated enrollment information.

The defendant admits that, at all relevant times, the Missouri Medicaid program relied on the truthfulness of information submitted to it in enrollment applications and revalidation applications. The defendant further admits that, at all relevant times, he, individually and through CCC, was enrolled as a Missouri Medicaid provider and caused to be submitted claims for payment to Missouri Medicaid.

**False Statement Contained in CCC's**
**October 2025 Missouri Medicaid Revalidation Application**

The defendant admits that, on or about August 10, 2021, he received a letter from a CMS contractor notifying him that CCC's payments from Medicare—another federally funded health care benefit program in which CCC was enrolled—were being suspended (*i.e.* held in escrow pending further investigation) based on credible allegations of fraud.

The defendant admits that, since August 10, 2021, he received periodic letters from the CMS contractor notifying him that the Medicare payment suspension continued to remain in place. The defendant admits that, as he knew, the Medicare payment suspension continued to remain in place until at least as recently as September 30, 2026.

The defendant admits that, on or about October 15, 2025, he signed and caused to be submitted a Missouri Medicaid revalidation application on behalf of CCC. The defendant admits that, in CCC's October 2025 Missouri Medicaid revalidation application, he was required to state whether CCC had ever been suspended from Medicare and, if so, to provide a written explanation. The defendant admits that, in response to this question, he failed to disclose the CCC Medicare payment suspension.

The defendant admits that, at the end of the revalidation application, he falsely certified that "[t]o the best of [his] knowledge, the information supplied on this application is accurate, complete and is hereby released to the Missouri Department of Social Services." The defendant admits that he signed the revalidation application.

The defendant admits that, as a result of the October 2025 revalidation application, MO HealthNet continued to allow CCC to be an enrolled provider and continued to allow the defendant, through CCC, to cause claims for payment to be submitted. If MO HealthNet had known of the Medicare suspension, it would not have approved CCC's revalidation application or allowed the defendant, through CCC, to continue submitting claims for payment.

The parties are in agreement that, based upon the known evidence and including the relevant conduct, the defendant is accountable for $4,009.91, which includes $1,171.83 of actual loss to Missouri Medicaid.

As to Count 1, the defendant admits that, on or about October 15, 2025, in St. Louis County, Missouri and the Eastern District of Missouri, he knowingly and willfully made and used a materially false writing and document, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services involving the Missouri Medicaid program, a health care benefit program as defined in 18 U.S.C. § 24(b), in violation of 18 U.S.C. § 1035, in that the defendant concealed in CCC's Missouri Medicaid revalidation application that, as the defendant knew, CCC was under a Medicare payment suspension, and the defendant falsely and fraudulent represented that such revalidation application was accurate and complete when, in fact, it was not, and the defendant then and there well knew said representation was false, fictitious, and fraudulent.

**5. <u>STATUTORY PENALTIES</u>:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than five years, a fine of not more than $250,000.00, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

**6. U.S. SENTENCING GUIDELINES (2025 MANUAL with November 2026 Amendments):**

The defendant understands that these offenses affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following U.S. Sentencing Guidelines Total Offense Level provisions apply.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 6, as found in Section 2B1.1.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The loss did not exceed $9,000, resulting in no offense level increase. U.S.S.G. § 2B1.1(b)(1)(A).

**b. Chapter 3 and 4 Adjustments:**

**(1) Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by the defendant which it believes are inconsistent

with the defendant's eligibility for this deduction, the Government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2)** **Adjustment for Certain Zero-Point Offenders:** If the Court determines that the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

**(3)** **Other Adjustments:** The parties agree that the following additional adjustments apply:

The parties agree that two levels should be added pursuant to Section 3B1.3 because the defendant abused a position of public or private trust.

There are no other agreements by the parties as to applicable Sentencing Guidelines.

**c.** **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 6, unless a two-level reduction under Section 4C1.1(a) applies based on the Court's determination of the defendant's criminal history. If the presentence investigation report determines a different Total Offense Level, the parties are permitted to object to or accept any enhancements or reductions in the presentence investigation report that are not specifically set forth in the plea agreement.

**d.** **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States

Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c. **Right to Records**: The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

a. **Disclosures Required by the United States Probation Office**: The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime the defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d.** **<u>Mandatory Special Assessment</u>:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100.00, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.** **<u>Possibility of Detention</u>:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.** **<u>Fines, Restitution and Costs of Incarceration and Supervision</u>:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g.** **<u>Forfeiture</u>:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest

the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact the defendant's immigration status or result in deportation. In particular, if any crime to which the defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if the defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in

its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

| | |
|---|---|
| 10/20/2026<br>Date | AMY E. SESTRIC, #66219MO<br>Assistant United States Attorney |
| 10/19/2026<br>Date | RAFFI KRIKORIAN<br>Defendant |
| 10/19/2026<br>Date | JEFF JENSEN<br>Attorney for Defendant |
| 10/19/2026<br>Date | MATTHEW MCBRIDE<br>Attorney for Defendant |